**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**HOUSTON METHODIST SUGAR LAND HOSPITAL**
16655 Southwest Freeway
Sugar Land, TX 77479

Plaintiff,

v.

**ROBERT F. KENNEDY, JR.**,
SECRETARY UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
200 Independence Avenue, S.W.
Washington, D.C. 20201

Defendant.

Case No.

**COMPLAINT FOR JUDICIAL REVIEW OF FINAL ADVERSE AGENCY DECISION ON MEDICARE REIMBURSEMENT**

This is a civil action against the Secretary for the United States Department of Health and Human Services (the "Secretary" of "HHS")[1] for judicial review following a final decision rendered on July 8, 2026, by the Provider Reimbursement Review Board ("PRRB" or "Board") (a component of HHS). The decision for which judicial review is sought is the dismissal of PRRB Case No. 18-1056. The basis for this lawsuit is the Secretary's willful refusal to follow clear, unambiguous federal law. Plaintiff Houston Methodist Sugar Land Hospital (hereinafter, "Plaintiff," "Provider," or "Plaintiff Hospital") specifically challenges the Board's dismissal of its administrative appeal of the Medicare Administrative Contractor's ("MAC") refusal to include all Medicaid eligible days, including section 1115 waiver days, in the Medicaid Fraction for the cost year at issue in this case (CYE 12/31/2014).

## INTRODUCTION

1. This timely action arises under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395 *et seq.* (the "Medicare Act"), 5 U.S.C. §§ 706 *et seq.* (the Administrative Procedure Act or "APA"), 28 U.S.C. § 1361 (mandamus), and other authorities. The Medicare payments here pertain to how inpatient hospital days should be counted for purposes of calculating the Plaintiff Hospital's Medicare Disproportionate Share Hospital ("DSH") payments for the fiscal year ("FY") ending on December 31, 2014.

2. The Board closed Plaintiff Hospital's administrative appeal noticed by letter dated July 8, 2026. That was preceded by a final decision noticed by a Board letter dated March 27, 2024, dismissing Plaintiff Hospital's individual appeal of the Medicaid eligible days issue (including the "§ 1115 waiver days issue," both decision notices attached as **Exhibit A**). (Ex. A at 16). The Secretary's MAC refusal to follow the clear dictates of the Centers for Medicare & Medicaid Services ("CMS") Manual Instructions System, Change Request 12669, Transmittal No.

[1] The Secretary is the proper defendant in this appeal. *See* 42 C.F.R. § 405.1877(a)(2).

11912 (March 16, 2023) (attached as **Exhibit B**), which provides an independent legal basis, mandamus, for this action.

**JURISDICTION AND VENUE**

3. This Court has jurisdiction under 42 U.S.C. § 1395oo(f) (appeal of final Medicare program agency decision), 28 U.S.C. §§ 1331 (federal question), and 1361 (mandamus). *See Heckler v. Ringer*, 466 U.S. 602, 616-17 (1984); *Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 811, 813-15 (D.C. Cir. 2001); *United States v. Monzel*, 641 F.3d 528, 534 (D.C. Cir. 2011). Jurisdiction also is available under 28 U.S.C. § 1331 where the agency renders a final determination for which there is no administrative appeal available. *Am. Chiropractic Ass'n v. Leavitt*, 431 F.3d 812, 816 (D.C. Cir. 2005).

4. Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f)(1) and 28 U.S.C. § 1391(e)(1).

**PARTIES**

5. Plaintiff Houston Methodist Sugarland Hospital, located at 16655 Southwest Freeway, Sugar Land, Texas 77479, had at all relevant times, a Medicare provider agreement and was eligible to participate in the Medicare program under Provider No. 45-0820. During the relevant time periods pertinent to this complaint, FY 2014, Plaintiff furnished inpatient and outpatient hospital services to Medicare patients.

6. Defendant, Robert F. Kennedy Jr., Secretary of HHS ("Secretary" or "Defendant"), 200 Independence Avenue, S.W., Washington D.C. 20201, is the federal officer responsible for the administration of the Medicare program. Defendant Kennedy is sued in his official capacity as Secretary of HHS.

**GENERAL BACKGROUND OF THE MEDICARE PROGRAM**

7. The Medicare Act establishes a system (the "Medicare program") of health insurance for the aged, disabled, and individuals with end-stage renal disease. 42 U.S.C. § 1395c.

The Medicare program is federally funded and administered by the Secretary through CMS (formerly the Health Care Financing Administration and its contractors. 42 U.S.C. § 1395kk(a); 42 Fed. Reg. 13262 (Mar. 9, 1977). CMS implements the Medicare program, in part, through rulemaking. *See* 42 C.F.R. § 401.108. In addition to the substantive rules published by the Secretary in the Code of Federal Regulations and the Rulings, CMS publishes other interpretative rules implementing the Medicare program, which are usually compiled in CMS manuals. The Secretary also issues other sub regulatory documents which generally do not have the force and effect of law. This civil action involves Medicare Part A. Part A provides coverage and payment for, among others, inpatient hospital services on a fee-for-service basis. 42 U.S.C. §§ 1395c to 1395i-6. Such items/services are furnished to Medicare beneficiaries by providers of services, including hospitals, that have entered into written provider agreements with the Secretary pursuant to 42 U.S.C. § 1395cc. Providers are paid (reimbursed) by CMS through MACs. *See* 42 U.S.C. § 1395kk-1(a).

8. Each Medicare-participating hospital is assigned to a MAC. 42 U.S.C. § 1395kk-1(a)(3)(B). The amount of the Medicare Part A payment to a hospital for services furnished to Medicare beneficiaries is determined by its MAC based on instructions from CMS. *See* 42 C.F.R. § 405.1803.

9. Effective with cost reporting years beginning on or after October 1, 1983, hospitals are reimbursed under the Hospital Inpatient Prospective Payment System ("IPPS") for inpatient hospital operating costs. *See* 42 U.S.C. § 1395ww(d). Under IPPS, Medicare payments for hospital operating costs are not based directly on the costs actually incurred by the hospitals. Rather, they are based on predetermined, nationally applicable rates based on the diagnosis of the patient

determined at the time of discharge from the inpatient stay, subject to certain payment adjustments. *See id.* One of these adjustments is the Medicare DSH payment. *See* 42 U.S.C. § 1395ww(d)(5)(F).

10. Congress enacted the DSH adjustment in recognition of higher costs associated with providing services to low-income patients. These higher costs have been found to result in part from the poorer health of those patients. The DSH adjustment provides additional Medicare reimbursement to hospitals for the increased cost of providing such services.

11. Hospitals that treat a disproportionately large number of low-income patients are entitled by statute to a DSH adjustment, in addition to standard Medicare payments. 42 U.S.C. § 1395ww(d)(5)(F). The DSH program was effect beginning with discharges on or after May 1, 1986. Pub. L. No. 99-272, § 9105, 100 Stat. 158-60 (Apr. 7, 1986).

12. There are two methods of determining qualification for a DSH adjustment: the more common "proxy method" and the less common "Pickle method." *See* 42 U.S.C. § 1395ww(d)(5)(F)(i)(I)-(II). Plaintiff Hospital's DSH calculations at issue were made using the proxy method, under which entitlement to a DSH adjustment, as well as the amount of the DSH payment, is based on a hospital's disproportionate patient percentage (hereinafter, "DPP"). 42 U.S.C. § 1395ww(d)(5)(F)(v)-(vi).

13. The DPP is the sum of two fractions, which are designed to capture the number of low-income patients a hospital serves on an inpatient basis by counting the number of days that low-income patients receive inpatient services in a given fiscal year ("inpatient days"). 42 U.S.C. § 1395ww(d)(5)(F)(vi). Thus, the two fractions serve as a "proxy" of a hospital's low-income patients, rather than having CMS count the actual number of those patients.

14. The first fraction, referred to as the "Medicare Fraction," accounts for inpatients who are current Medicare Part A recipients whilst *also* being entitled to Supplemental Security

Income ("SSI") benefits, a federal low-income supplement. The Medicare Fraction is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of such hospital's patient days for such period which were made up of patients who (for such days) were entitled to benefits under part A of this subchapter and were entitled to supplementary security income benefits (excluding any State supplementation) under subchapter XVI of this chapter, and the denominator of which is the number of such hospital's patient days for such fiscal year which were made up of patients who (for such days) were entitled to benefits under Part A of this subchapter[.]

42 U.S.C. § 1395ww(d)(5)(F)(vi)(I). The Medicare Fraction, therefore, is the percentage of a hospital's Medicare Part A-entitled inpatients who were also entitled to SSI benefits at the time that they were receiving inpatient services at the hospital.

15. The second fraction, referred to as the "Medicaid Fraction," is defined by statute as follows:

> [T]he fraction (expressed as a percentage), the numerator of which is the number of the hospital's patient days for such period which consist of patients who (for such days) were eligible for medical assistance under a State plan approved under title XIX, but who were not entitled to benefits under part A of this subchapter, and the denominator of which is the total number of the hospital's patient days for such period.

42 U.S.C. § 1395ww(d)(5)(F)(vi)(II).

16. The Medicaid Fraction, therefore, is intended to account for hospital inpatients "…who were not entitled to benefits under [Medicare] [P]art A," who were "…eligible for medical assistance…" under the Medicaid State plan at the time that they were receiving inpatient services at the hospital. The Medicaid Fraction is at issue in this case.

17. The statute further provides that for purposes of determining the Medicaid Fraction "…the Secretary may, to the extent and for the period the Secretary determines appropriate, include patient days of patients not so eligible but who are regarded as such because they receive benefits under a demonstration project approved under subchapter XI." 42 U.SC §1395ww(d)(5)(F)(vi)(II).

Patient days of patients who receive benefits under a demonstration project approved under subchapter XI of the Social Security Act are commonly referred to as "section 1115 waiver days" (because of the Secretary's waiver or demonstration project authority under section 1115 of the Social Security Act). The Secretary's non-inclusion of section 1115 waiver days in Plaintiff Hospital's Medicaid Fraction for its 2014 FY is at the heart of this action. As discussed *infra.,* section 1115 waiver days *are* in fact Medicaid **eligible** days and need not be distinguished from any and all other Medicaid **eligible** days when presenting an appealable issue before the Board. (*See, e.g.*, *Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121, 122 (D.C. Cir. 2020); *see also* CMS Change Request 12669, Transmittal No. 11912 (March 16, 2023); (Ex. B at 3)).

**THE RELEVANT MEDICARE APPEALS PROCESS**

18. At the close of its FY, a provider must submit a cost report to the MAC showing the costs it incurred during the fiscal year and the portion of those costs to be allocated to Medicare. 42 C.F.R. § 413.20. For Medicare, each hospital's MAC is required to analyze and audit the hospitals annually submitted Medicare cost report and issue a Medicare Notice of Amount of Program Reimbursement ("NPR"), which informs the hospital of the final determination of its total Medicare reimbursement for the hospital's fiscal year. 42 C.F.R. § 405.1803. In addition to including costs on its cost report, a hospital also is required to make a claim, or alternatively self-disallow, for any modification to its basic IPPS payment adjustment, such as the DSH adjustment.

19. The Medicare Act provides that if a hospital is dissatisfied with its MAC's final determination (or any revised final determination) of the hospital's total Medicare program reimbursement for a fiscal year, as reflected in its NPR, and the hospital satisfies the amount in controversy requirements (not an issue in this case), the hospital has a right to obtain a hearing before the PRRB by filing an appeal within 180 days of receiving its NPR (or any revised NPR).

42 U.S.C. § 1395oo(a). In addition, the statute allows a hospital that is dissatisfied with a final determination of the Secretary as to the amount of the payment under subsection (b) or (d) of 42 U.S.C. § 1395ww to obtain a PRRB hearing by requesting the hearing within 180 days after notice of the Secretary's final determination. 42 U.S.C. § 1395oo(a)(1)(A)(ii), (a)(3).

20. The regulations interpret the statutory requirements by stating that "…the date of receipt by the Board of the provider's hearing request must be no later than 180 days after the date of receipt by the provider of the final contractor or Secretary determination." 42 C.F.R. § 405.1835(a)(3).

21. In addition to having the authority to make substantive decisions concerning Medicare reimbursement appeals, the PRRB is authorized to decide questions relating to its jurisdiction and procedure. The decision of the PRRB on substantive or jurisdictional issues constitutes final administrative action unless the Secretary reverses, affirms, or modifies the decision within 60 days of the hospital's notification of the PRRB's decision. 42 U.S.C. § 1395oo(f)(1); 42 C.F.R. §§ 405.1875 and 405.1877. The Secretary has delegated authority under the statute to review PRRB decisions to the CMS Administrator. Thus, the Secretary's final administrative decision for purposes of judicial review is either the decision of the PRRB or the decision of the CMS Administrator after review of the PRRB's decision.

22. A hospital may obtain judicial review by filing suit within 60 days of receipt of the Secretary's final administrative decision in the United States District Court for the judicial district in which the hospital is located or in the United States District Court for the District of Columbia. 42 U.S.C. § 1395oo(f)(1). Pursuant to 42 C.F.R. § 405.1801(a)(1)(iii), the date of receipt by a party involved in proceedings before the PRRB is presumed to be five days after the date of issuance of

a PRRB document.[2] As such, the deadline in this case to seek judicial review is September 11, 2026. This filing is therefore timely.

23. Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. § 1395oo(f). Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within 30 days of a "final determination."

## APPLICABILITY OF THE APA TO MEDICARE APPEALS

24. Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "…shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "…reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "…reviewing court shall … hold unlawful and set aside agency action, findings, and conclusions found to be … unsupported by substantial evidence in a case … reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

## LITIGATION OVER SECTION 1115 WAIVER DAYS AND THE SECRETARY'S ACQUIESCENCE IN FIFTH AND D.C. CIRCUIT DECISIONS

25. In *HealthAlliance Hospitals v. Azar*, 346 F. Supp. 3d 43 (D.D.C. 2018), Court rejected the Secretary's assertion that for hospital days under a section 1115 waiver to be included in the Medicaid Fraction, the terms of waiver agreement between the State Medicaid agency and the Secretary must contain an explicit statement that patients covered by the waiver are "…eligible

[2] Under 42 U.S.C. § 1395oo(f)(2), interest is to be awarded in favor of the prevailing party in an action brought under 42 U.S.C. § 1395oo(f). Under 42 U.S.C. § 1395g(d), CMS is required to pay interest on underpayments to Medicare providers, if the underpayment is not paid within 30 days of a "final determination."

for inpatient hospital services." *See id.* at 46. That Court disagreed. *See id.* at 46-47. According to the *HealthAlliance* court:

> [i]t is clear from the plain language of the regulation's text [at 42 C.F.R. § 412.106(b)(4)(i)] that patients who are eligible to receive comprehensive medical care through an insurance program authorized under a section 1115 waiver (as evidenced by their eligibility for inpatient hospital services) are to be included in the Medicare reimbursement formula, and whether or not the waiver agreement through which the Secretary authorized the program *says* anything about their eligibility for inpatient hospital services is irrelevant to the calculation of a hospital's disproportionate share hospital adjustment.

*Id.* at 47. This remains true in this dispute.

26. A similar issue was then presented in *Forrest General Hospital*, 926 F.3d 221 (5th Cir. 2019). The Secretary claimed an uncompensated care pool related to Hurricane Katrina was not part of a section 1115 waiver. *See id.* at 232. In disagreeing, the Fifth Circuit found the

> …excellent opinion in *HealthAlliance Hospitals, Inc. v. Azar* extremely persuasive. That opinion convincingly explains why the law governing the inclusion of section 1115 waiver patient days in the Medicaid fraction is straightforward: the plain regulatory text demands that such days be included - period.

*Id.* at 234 (citations omitted). The Fifth Circuit also held that the statute was unambiguous and noted with respect to 42 C.F.R. § 412.106(b)(4) that, "[w]hat does *not* matter for purposes of this regulation is what the plan documents say about eligibility for particular services." *See id.* at 228-29. Following *Forrest General*, the Secretary continued to litigate, and lose, the issue whether days associated with patients who were covered under a section 1115 waiver that included an uncompensated care pool, and which did not specifically mention inpatient hospital benefits, should be included in the Medicaid Fraction. *See, e.g., Bethesda Health, Inc. v. Azar*, 389 F. Supp. 3d 32 (D.D.C. 2019), *aff'd*, 980 F.3d 121, 122 (D.C. Cir. 2020).

27. As a result of those losses, CMS issued guidance acquiescing to the Fifth Circuit and D.C. Circuit decisions. (*See* Ex. B). The manual instructions provide that upon a hospital submitting a listing of its section 1115 waiver days, the hospital's MAC must do the following:

> [f]or cost reports that are open via a [] (PRRB) appeal that has not yet been heard before the PRRB, [s]ection 1115 days will be reviewed through the normal Administrative Resolution process within 24 months of the CR implementation date. In order for the Medicare Administrative Contractor (MAC) to consider the providers' Section 1115 days in recalculation of the Medicaid fraction, the following review shall take place, only as deemed necessary by the Uniform Desk Review process or Administrative Resolution process:
>
> 1. For providers with patients whose inpatient stay is covered by a Section 1115 waiver program funding pool, which pays health care providers that provide uncompensated care to patients who are uninsured or underinsured and is matched by Title XIX federal funds, the MAC shall review the State's Section 1115 program documents to determine the method by which the provider identifies eligible inpatient stay days.
>
> 2. The MAC shall select a sample of accounts from the provider's submitted Section 1115 log for further review.
>
> 3. The MAC shall request documentation from the provider for the selected sample and review the documentation to ensure that: a) the provider has accurately included the inpatient stay in the Section 1115 waiver program for reimbursement through the funding pool based on the provider's Section 1115 approved program documents; and b) has accurately included the inpatient stay on the Section 1115 log.
>
> 4. The MAC shall review the provider's applicable documentation that details the patient's length of stay and the acute-care unit that the patient's stay occurred to verify the patient's length of stay in an inpatient acute section of the hospital.

(*Id.* at 4).

28. In the FY 2024 IPPS rulemaking, the Secretary proposed and finalized new and restrictive regulations on including section 1115 waiver days in the Medicaid Fraction; however, these regulations are prospective only. *See* 88 Fed. Reg. 58640, 59017 (Aug. 28, 2023) ("Finally, we are finalizing as proposed that our revised regulation would be effective for discharges occurring on or after October 1, 2023").

## **SPECIFIC FACTS PERTAINING TO THIS CASE**

### A. *Arbitrary Dismissal of Section 1115 Waiver Days "Issue."*

29. On September 14, 2017, the MAC issued an NPR for Plaintiff's cost year ending December 31, 2014. On March 9, 2018, the Board received Plaintiff's individual appeal request

(attached as **Exhibit C**) appealing its DSH adjustment. Plaintiff timely appealed the MAC's non-inclusion of Medicaid eligible days, stating that "[t]he MAC, contrary to the regulation, failed to include ***all Medicaid eligible days***, *including but not limited to* Medicaid paid days, unpaid eligible days, eligible days adjudicated and processed after the cutoff date and all out of State eligible days in the Medicaid Percentage of the Medicare DSH calculation." (Ex. A at 26, n. 57, Ex. C at 26) (emphasis added). The italicized language above demonstrates that Plaintiff appealed *all* Medicaid eligible days, which by definition ***included*** section 1115 waiver days.

30. Notwithstanding the noted language, on March 27, 2024, the Board dismissed Plaintiff's appeal while adopting what the MAC phrased in its Motion to Dismiss as, the "[section] *1115 waiver days issue*." (Ex. A at 16) (emphasis added). It is noteworthy that this concocted phrase intended by the Board to have bearing on Plaintiff's appeal is merely illusory; indeed, the phrase "*1115 waiver days issue*" reflecting the Board's effort to rely upon some *creative* nomenclature as a means to 'characterize an issue' exists nowhere in statutory law.

31. Providing more detail, the Board set forth three reasons for its dismissal. First, the Board stated "[b]ecause the Provider did not either appeal the § 1115 waiver days issue or add it to the appeal prior to the deadline to add issues and because it is a distinct issue, the Board finds that the § 1115 waiver days issue was not properly or timely appealed or added to this case. Consistent with 42 C.F.R. § 405.1835(d) and Board Rule 8, the DSH Medicaid eligible days issue as stated in the original appeal request cannot be construed to include the §1115 waiver days issue." (Ex. A at 26). That is, the Board contends section 1115 waiver days are not Medicaid eligible days but are a separate and distinct issue which, the Board claimed, the Provider failed to include in its appeal. The Board proffered several rationales as support, but all fail. (*See id*. at 22-26).

32. Second, the Board claimed that Plaintiff "…failed to properly brief the merits of [the § 1115 waiver days] issue … in its preliminary position paper in compliance with

§405.1853(b)(2) and Board Rule 25." (Ex. A at 26). The Board went on, stating "…there is no indication that any § 1115 waiver days were included with the as-filed cost report and, if true, would make them an unclaimed cost and provide an independent basis for dismissal (see Alert 10 discussion *supra*)." (*Id.* at 27).

33. The Board also cited multiple cases and its own rules to justify finding section 1115 waiver days were not included in the appeal. In footnote 56 of its dismissal, the Board cited several cases presumably in support of its position.[3] Yet most of the cases cited by the Secretary (*i.e.*, *Forrest General*, *HealthAlliance*, and *Bethesda*) <u>support</u> Plaintiff's position. To the extent some other cases may support the Board's decision, they precede the seminal cases to which the Secretary acquiesced.

B. *Substantial Evidence Supports Plaintiff's Position*.

34. The Board's distinction of a "… [section] 1115 Waiver days ***<u>issue</u>***" was both disingenuous and pure *fiction*. (Ex. A at 16) (emphasis added). The *<u>issue</u>* properly before the Board

---

[3] Footnote 56 lists decisions surrounding section 1115 waiver days, stating:

> *See, e.g.*, *QRS 1993-2007 DSH/Iowa Indigent Patient /Charity Care (GA) Group v. Blue Cross Blue Shield Ass'n*, Adm'r Dec. (Jan. 15, 2013), *affirming* PRRB Dec. No. 2013-D02 (Nov. 21, 2012)*; St. Dominic-Jackson Mem'l Hosp. v. Sebelius*, No. 3:12-cv-832, 2014 WL 8515280 (S.D. Miss. 2014); *Singing River Health Sys. v. Novitas Solutions, Inc.*, PRRB Dec. 2016-D19 (Sept. 20, 2016), *rev'd* CMS Adm'r Dec. (Nov. 18, 2016); *CCT&B 2005-2006 Hurricane Katrina § 1115 Waiver UCP Days Grp. v. Novitas Solutions, Inc.*, PRRB Dec. 2016-D18 (Sep. 16, 2016), *rev'd* CMS Adm'r Dec. (Nov. 18, 2016), *aff'd sub nom. Forrest Gen. Hosp. v. Hargan*, No. 2:17-CV-8, 2018 WL 11434575 (S.D. Miss. Feb. 22, 2018), *rev'd & remanded Forrest Gen. Hosp. v. Azar*, 926 F.3d 221 (5th Cir. 2019); *Southwest Consulting UMass Mem'l Health Care & Steward Health 2009 DSH CCHIP Section 1115 Waiver Days Grps. v. Nat'l Gov't Servs., Inc.*, PRRB Dec. 2017-D04 (Jan. 27, 2017), *rev'd* CMS Adm'r Dec. (Mar. 21, 2017), *vacated & remanded sub nom. HealthAlliance Hosps., Inc. v. Azar*, 346 F. Supp. 3d 43 (D.D.C. Oct. 26, 2018); *Florida Section 1115 LIP Rehab DSH Waiver Days Grps. v. First Coast Serv. Options*, PRRB Decs. 2018-D21, 2018-D22 (Feb. 8, 2018), *vacated by* Adm'r Dec. (Mar. 30, 2018), *rev'd by Bethesda Health Inc. v. Azar*, 389 F. Supp. 3d 32 (DDC 2019), *aff'd by* 980 F.3d 121 (D.C. Cir. 2020).

(Ex. A at 25-26, n. 56).

in Plaintiff's administrative appeal was the inclusion of all Medicaid eligible days for purposes of calculating DSH reimbursement, which would definitionally include section 1115 waiver days.

35. The regulations at 42 C.F.R. § 405.1835 contain requirements for appealing an issue and a time limit on adding an issue – not on "sub-issues" or "components" of an issue. Both a June 25, 2004 proposed rule (69 Fed. Reg. 35716) and a May 23, 2008 final rule (73 Fed. Reg. 30190) support that an "issue" is encapsulated by a specific cost report adjustment. They do not carve an "issue" into component parts, including the specific reason why Medicaid eligible days were not counted in the numerator of the Medicaid Fraction of the DPP.

36. For example, the proposed rule states that:

> … to preserve its appeal rights, a provider must either claim an item on its cost report where it is seeking reimbursement that it believes to be in accordance with Medicare policy, or self-disallow the item where it is seeking reimbursement that it believes may not be in accordance with Medicare policy … Note that we are using the term "item" instead of "cost" to emphasize that our proposed policy would refer to determinations of amounts due to providers subject to a prospective system as well as determinations of reimbursement due to providers that are paid under cost reimbursement principles.

69 Fed. Reg. at 35722. Similar language appears in the final rule at 73 Fed. Reg. 30194. A MAC's cost report determination is synonymous with an "adjustment." In this case, the same adjustment to so-called "traditional Medicaid eligible days" governs Medicaid eligible days associated with beneficiaries covered under a section 1115 waiver. (Ex. A at 23). To the extent that the regulations were interpreted as requiring providers to appeal "sub-issues" or "components" of issues, the regulations would impermissibly restrict the PRRB's jurisdictional limits.

C. *The Board's Rule 8 Is Arbitrary and Invalid.*

37. Rule 8 of the July 1, 2015, version of the PRRB Rules ("2015 Rules"), cited by the Board in its dismissal, provides "…each contested component must be appealed as a separate issue…" is wholly inconsistent with Rule 7. (Ex. A at 19). Whereas Rule 8 refers to "components" of an issue and mentions neither section 1115 waiver days nor Medicaid eligible days as examples,

Rule 7.1 provides that, for purposes of identifying the "issue" under appeal, a provider needs to submit "…a concise issue statement…" that describes the cost report adjustment, including the cost report adjustment number, why the cost report adjustment is incorrect, and how the payment should be determined differently. (Ex. A at 19). Thus, Rule 8 is inconsistent with the regulations AND Rule 7.

38. Moreover, Rule 8 of the 2015 Rules identifies neither section 1115 waiver days nor Medicaid eligible days as "common examples" of different "components" of the DSH payment calculation that may be in dispute. (Ex. A at 19). Given that Rule 8 was later revised in the August 29, 2018 version of the PRRB Rules ("2018 Rules") to include such "components," the Board clearly did not think such "issues" needed to be appealed separately at the time of the filing of Plaintiff's individual appeal. This is clearly demonstrated by the fact that the "dual eligible" DSH issue was identified as a single issue to be appealed separately in the 2015 Rules, whereas later on the Board retroactively split the "dual eligible" days issue into two issues (related to the Medicare/SSI and Medicaid Fractions, respectively) to be appealed separately almost a decade later as shown in a number of issue bifurcation determinations issued by the Board (e.g., Determination on Bifurcation of Dual Eligible Days - SSI and Medicaid Fractions Issue for PRRB Case No. 24-0301 attached as **Exhibit D**). (Ex. D at 2).

39. The Board's retroactive bifurcation of the "dual eligible" issue into issues related to the Medicare/SSI and Medicaid Fractions indicates that it is willing to change its opinion on whether an issue should be appealed separately on a whim, which creates an atmosphere of confusion among providers with respect to which issues must be appealed separately. If such an issue is explicitly a single appealable issue in the 2015 Rules but later bifurcated into two separate issues, how are providers supposed to know which issues must be appealed separately? It is clear

by these events that the Board's perception of what issues are "component" issues is arbitrary and, as such, decisions based thereon are also arbitrary.

40. Additionally, in accordance with both Rule 7.1 of the July 1, 2015 version of the PRRB Rules, the Provider appealed the "Disproportionate Share Hospital Payment - Medicaid Eligible Days" issue using adjustment numbers 5, 8, 14, and 19 from the adjustment report issued by the Provider's designated MAC in connection with the Provider's FY 2014 cost report, which represent adjustments relating to *all* Medicaid eligible days, including section 1115 waiver days. (*See* Ex. C at 11-12, 17-18, 26, 28).

41. Whereas Rule 7 directs providers to Rule 8, Rule 8 directs the providers to Rule 7, making this type of circular reasoning a thinly veiled attempt to obfuscate providers rather than enlighten them. Indeed, all that is served by that confusion is an endless loop of inconsistent propositions, creating ambiguity and logically flawed explanations that leaves providers baffled.

42. Above all, Rule 8 is predicated on the supposed need "[t]o comply with the regulatory requirement…" regarding specifically identifying the items in dispute. However, the Board's Rule 8 proceeds with the misunderstanding that the regulations require ***components*** of an issue be identified, when in fact this is not true, *supra*. For this reason alone, Rule 8's requirement to identify "components" of an issue is arbitrary and capricious, and thus, invalid.

43. The supposed requirement that a provider go further and specify not only DSH reimbursement, and not only the Medicaid eligible days portion of such reimbursement, but also the section 1115 waiver days component of Medicaid eligible days, is not found in the statute, but only in a version of the PRRB rules published *after Plaintiff's individual appeal request was filed*. The Board has no authority to expand or constrict its jurisdiction given to it by Congress. Its requirement that providers must describe "components" of issues simply to obtain a hearing conflicts with the statute and is facially invalid.

44. In *Azar v. Allina Health Services et al.*, the Supreme Court held "…the phrase 'substantive legal standard,' which appears in § 13955hh(a)(2) and apparently nowhere else in the U. S. Code, cannot bear the same construction as the term 'substantive rule' in the APA…" and that a new policy that establishes or changes a "substantive legal standard" that affects Medicare benefits must be subject to the statutory process of public notice-and-comment rulemaking. *See Azar v. Allina Health Services et al.*, 587 U.S. 566, 579, (2019); *see also* 42 U.S.C. § 1395hh(b). The Supreme Court did not disturb the D.C. Circuit's holding below that "…the Medicare Act requires notice-and-comment rulemaking for any (1) 'rule, requirement, or other statement of policy' that (2) 'establishes or changes' (3) a 'substantive legal standard' that (4) governs 'payment for services.'" *Allina Health Servs. v. Price*, 863 F.3d 937, 943 (D.C. Cir. 2017). Nor did it disturb the D.C. Circuit's holding that "'[s]ubstantive law' is law that 'creates, defines, and regulates the rights, duties, and powers of parties.'" *Id.*

45. Rule 8 of the July 1, 2015, updated version of the PRRB Rules, in effect at the time of this appeal and acts as a logical extension of Rule 8 of the August 21, 2008, version of the PRRB Rules, specifies that certain issues must be appealed separately. Rule 8 of the August 21, 2008 version of the PRRB Rules changed a "substantive legal standard" with respect to payments under the Medicare Act because it defines or regulates the rights of providers to proceed before the PRRB. As such, it should have but did not go through notice-and-comment rulemaking, and it along with all subsequent versions of Rule 8 are therefore invalid under clear Supreme Court precedent. *See, e.g.*, *Allina Health Services et al.*, 587 U.S. at 579.

46. Additionally, as stated *supra*, the Board included several court opinions in footnote 56 that were also cited by Plaintiff when discussing the inclusion of section 1115 waiver days in its Medicaid Fraction in Plaintiff's final position paper (attached with its exhibits as **Exhibit E**). (*See*

Ex. A at 26, n. 56; *see also* Ex. E at 17). These cases[4] plainly support Plaintiff's position. Specifically, pursuant to the courts' decisions in *Forrest General Hospital* and *Bethesda Health* "…[the] additional Medicaid-eligible days … attributable to patients who were eligible for inpatient hospitals [sic] services under Texas's Section 1115 waiver, the Texas Healthcare Transformation and Quality Improvement Program … must be included in the Medicaid fraction of the Medicare DSH calculation." (Ex. E at 9).

47. With respect to the identification of "…the specific state § 1115 waiver program(s) at issue…" in Plaintiff's preliminary position paper, the Board's citation to 42 C.F.R. § 405.1853(b)(2)-(3), 42 C.F.R. § 412.106(b), and Board Rule 25 was arbitrary and capricious. 42 C.F.R. § 405.1853(b)(2)-(3), in pertinent part, provides only:

> (2) Each position paper must set forth the relevant facts and arguments regarding ... the merits of the provider's Medicare payment claims for each remaining issue.
>
> (3) Exhibits regarding the merits of the provider's Medicare payment claims may be submitted in a timeframe to be decided by the Board through a schedule applicable to a specific case or through general instructions.

Nothing in the regulation requires a provider to identify "the specific state [section] 1115 waiver program(s) at issue" with its preliminary position paper. (*See* Ex. A at 26-27).

48. Moreover, 42 C.F.R. § 412.106(b) pertains only to requirements for whether days should be counted *by the MAC* as Medicaid-eligible in a hospital's DSH calculation, not requirements for the Board's jurisdiction over the Provider's appeal. Similarly, Board Rule 25 does require identification of the "…the specific state § 1115 waiver program(s) at issue." (Ex. A at 25). The Board's appeal to this supposed requirement was disingenuous at best as there was, during the fiscal year under appeal and when the Hospital's appeal was filed, ***only one Texas Section 1115 waiver program***, the Texas Healthcare Transformation and Quality Improvement Program. (*See*

[4] *Forrest Gen. Hosp.*, 926 F.3d 221 and *Bethesda Health, Inc*, 389 F. Supp. 3d 32.

Centers for Medicare and Medicaid Services Special Terms and Conditions attached as **Exhibit F** at 47-49). Further, Plaintiff complied with Board Rule 25 in briefing the section 1115 waiver days "issue" as this "issue" was, as explained *supra*, encompassed by the Disproportionate Share Hospital Payment – Medicaid Eligible Days issue briefed in Plaintiff's preliminary position paper (attached as **Exhibit G**). (See Ex. G at 6-8).

49. Plaintiff, in support of the inclusion of section 1115 waiver days in its Medicaid Fraction, explained in its final position paper that "[t]he Bethesda Health and Forrest General decision require CMS to include inpatient days attributable to patients whose care is covered by the Texas Uncompensated Care Pool." (Ex. E at 11).

50. The D.C. Circuit's *Bethesda* opinion, within which the *Forrest General Hospital* and *HealthAlliance Hospitals, Inc.* opinions are cited as "well-reasoned," directly supports Plaintiff's claim regarding the merits of the inclusion of section 1115 waiver days in its Medicaid Fraction. *See Bethesda Health Inc.*, 389 F. Supp. 3d 32. CMS's acquiescence to the D.C. Circuit's holding in *Bethesda* in its March 16, 2023 publication further establishes the Board's jurisdiction over the section 1115 waiver days at issue as part of the Medicaid Eligible Days issue, contrary to the Board's assertion that it is a "distinct issue." (Ex. A at 26).

51. Finally, the PRRB's assertion that it was an independent basis for dismissal that "…there is no indication that any § 1115 waiver days were included with the as-filed cost report…" was arbitrary and capricious, especially because MACs frequently accept days identified *after* the cost report is filed. (Ex. A at 27). The total count of Medicaid eligible days is a variable aspect of a hospital's cost report that depends on factors that can change after the hospital's initial cost report is filed. The inherent retroactive nature of Medicaid eligibility determinations means that a provider will never know who all of its Medicaid patients are at the time of their admissions. As is the case

with other Medicaid eligible days, the treatment of this variability likewise applies to section 1115 waiver days.

D. *Dismissal of DSH Payment - Medicaid Eligible Days Issue*.

52. The Board dismissed the DSH Payment - Medicaid Eligible Days issue stating that, "the Provider was in violation of Board Rule 25.3 when it failed to sufficiently develop and set forth the relevant facts and arguments regarding the merits of its claim *in its preliminary position paper*… pursuant to 42 C.F.R. § 405.1853(b)(2) and Board Rule 25." (Ex. A at 17).

53. The Board's dismissal of the DSH Payment - Medicaid Eligible Days issue was also due to it finding "…[t]he Provider then fully abandoned these 123 Medicaid eligible days by failing to even mention them as part of its December 19, 2023 final position paper…" (*Id.*).

E. *The Secretary's Actions Violate the APA and Other Authorities*.

54. Under 42 U.S.C. § 1395oo(f)(1), an action brought for judicial review of final agency action involving PRRB appeals "…shall be tried pursuant to the applicable provisions under chapter 7 of title 5" of the U.S. Code, which contains the APA. Under the APA, a "…reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). Further, a "…reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . unsupported by substantial evidence in a case . . . reviewed on the record of an agency hearing provided by statute[.]" 5 U.S.C. § 706(2)(E).

55. By the Secretary's own regulations regarding position papers, as mentioned *supra* 42 C.F.R. § 405.1853(b)(2) provides only that:

…

> (2) The Board has the discretion to extend the deadline for submitting a position paper. Each position paper must set forth the relevant facts and arguments regarding the Board's jurisdiction over each remaining matter at issue in the appeal (as

> described in § 405.1840 of this subpart), and the merits of the provider's Medicare payment claims for each remaining issue.

42 C.F.R. § 405.1853(b). This regulation does *not* require providers to enumerate in position papers the specific Medicaid eligible days at issue, which are important to the MAC's - but not the PRRB's - adjudication.

56. The Board's references to Plaintiff's obligations under 42 C.F.R. § 405.1853(b)(2) are unavailing. Section 405.1853(b)(2) simply requires position papers to set forth the "relevant facts and arguments" regarding Board jurisdiction and the merits, with supporting exhibits. Neither required Plaintiff to submit specific Medicaid eligible days with its preliminary position paper.

57. Plaintiff was compliant with the PRRB's rules, which do not require identification of specific Medicaid eligible days. Board Rule 25 relates to the submission of documents necessary to support a provider's position. They specifically direct that protected health information or other personally identifiable information "…is generally not necessary for documentation submitted to the Board." Board Rule 1.4. Identification of specific Medicaid eligible days, while necessary for the MAC's ultimate <u>audit</u> of Plaintiff's claims, was not necessary for the PRRB's consideration of the <u>issue</u>.

58. Furthermore, the Board's supposed conclusion that the "…Provider then fully abandoned these 123 Medicaid eligible days," (Ex. A at 17) was, in and of itself arbitrary and capricious. Plaintiff's initial appeal specifically listed the reimbursement impact of the DSH Payment - Medicaid Eligible Days issue as "$15,887." (Ex. C at 28). Additionally, Plaintiff stated in its preliminary position paper that it was "…seeking reimbursement for an additional 123 Medicaid Eligible days. The Provider, in this appeal, contends that the documentation necessary to pursue DSH was not available from the State of Texas in time to include all DSH/Medicaid Eligible Days on the cost report." (Ex. G at 6).

59. Moreover, Plaintiff submitted a redacted version of the listing of "an additional 3,406 Medicaid Eligible days" days to the Board as "Exhibit I" of Plaintiff's final position paper filing on December 19, 2023 entitled "Additional DSH Days Log (1115 Waiver Days) and Impact Calculation ($431,197)." (Ex. E at 7, 17-43).

60. Notably, contrary to the Board's findings, Plaintiff did not "fully" abandon the 123 additional Medicaid eligible days it sought to add to the numerator of its Medicaid Fraction of its DSH calculation for its FY 2014 cost report. It used "Medicaid Eligible days" and "1115 Waiver Days" interchangeably as, per the decisions in *Bethesda*, *Forrest General*, *HealthAlliance*, and CMS's subsequent acquiescence in Change Request 12669, Transmittal No. 11912 (March 16, 2023), section 1115 waiver days are Medicaid eligible days.

61. Furthermore, Plaintiff cannot be expected to produce a listing of days that have not yet been confirmed by the State, thus, as stated *supra*, it filed its final position paper with a redacted listing of additional Medicaid eligible days as "Exhibit I." (Ex. E at 17-43). Due to the Board and MAC's understanding of the inherent retroactive nature of Medicaid eligibility, it was arbitrary and capricious of the Board to hold Plaintiff's initial 123 day estimate from its individual appeal request against it and disregard its submitted listing of additional Medicaid eligible days. Thus, the Board acted arbitrarily and capriciously to disregard Plaintiff's submitted listing, find that "…[t]he Provider … fully abandoned … [the] Medicaid eligible days," and dismiss Plaintiff's appeal. That decision should be overturned due to the Secretary's unlawful actions.

## **Count I**

### Judicial Review Under the Medicare Act and the APA

### (The Board's Dismissal of the Section 1115 Days Component was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)

62. Plaintiff Hospital incorporates paragraphs 1-61 of this Complaint by reference.

63. The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence," *id.* § 706(2)(E).

64. The Board's dismissal of the section 1115 waiver days component of its appeal relating to Medicaid eligible days was ultra vires, arbitrary and capricious, an abuse of discretion, and otherwise contrary to the Medicare Act.

**Count II**

**Judicial Review under 28 U.S.C. § 1331 and the APA**

**(The MAC's Determination was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

65. Plaintiff Hospital incorporates paragraphs 1-64 of this Complaint by reference.

66. The MAC's refusal to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023) and audit and accept the Plaintiff Hospital's section 1115 waiver days was a final determination for which there is no administrative appeal. Therefore, this Court has jurisdiction to hear the Plaintiff Hospital's appeal of this final determination. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986).

67. The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence," *id*. § 706(2)(E).

68. The MAC's refusal to comply with the Manual Instructions, which bound the MAC, was arbitrary and capricious, an abuse of discretion, and contrary to the Medicare Act.

**Count III**

**Due Process Violation**

69. Plaintiff Hospital incorporates paragraphs 1-68 of this Complaint by reference.

70. Plaintiff Hospital has a property right under the Fifth Amendment of the U.S. Constitution that requires the Secretary and the Secretary's agents to follow their own rules and give pre-deprivation and fair notice to the Plaintiff Hospital.

71. By imposing an unlawful requirement that the Plaintiff Hospital specifically identify "§ 1115 waiver days" in its appeal request, the Board deprived Plaintiff Hospital of due process because that requirement was contrary to the Secretary's regulations and because the Board's rules in effect at the time the Plaintiff Hospital filed its appeal request for a Board hearing did not give prior and fair notice of such a requirement.

## **Count IV**

### **Mandamus**

72. Plaintiff Hospital incorporates paragraphs 1-71 of this Complaint by reference.

73. Under 28 U.S.C. § 1361, federal district courts have "…original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."

74. The Secretary and its agents have the non-discretionary duty to apply properly the substantive and procedural laws relating to Medicare payment and the Board has the non-discretionary duty to apply properly laws relating to its jurisdiction and review of EJR requests.

75. The Secretary's MAC has refused to follow the clear dictates of CMS Manual Instructions System, Change Request 12669, Transmittal No. 11912 (March 16, 2023). These instructions require the MAC to accept audit and accept verified section 1115 waiver days for any appeal pending before the Board.

76. The Manual Instructions provide an independent legal basis, outside of the appeal before the Board, for the Plaintiff Hospital's section 1115 waiver days to be included in the Medicaid Fraction of its Disproportionate Payment Percentage.

77. Plaintiff Hospital has exhausted its administrative remedies by demanding that the MAC audit and accept verified section 1115 waiver days.

**Count V**

**All Writs Act**

78. Plaintiff Hospital incorporates paragraphs 1-77 of this Complaint by reference.

79. The DSH payment at issue violated the Medicare Act and APA. Under the All Writs Act, 28 U.S.C. § 1651(a): "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

80. This Court, properly seized of jurisdiction, should issue an order requiring CMS to make proper DSH payment to Plaintiff Hospital and pay appropriate underpayment interest thereon under 42 U.S.C. §§ 1395oo(f)(2), 1395g(d) and/or 1395l(j), and 42 C.F.R. § 405.378.

**Count VI**

**Judicial Review Under the Medicare Act**
**(The Board's Actions are Arbitrary, Capricious, an Abuse of Discretion, and Otherwise Contrary to Law because Rule 8 is Procedurally Invalid)**

81. Plaintiff Hospital incorporates paragraphs 1-80 of this Complaint by reference.

82. Under 42 U.S.C. § 1395hh(b): "…the Secretary shall provide for notice of the proposed regulation in the Federal Register and a period of not less than 60 days for public comment thereon."

83. As there was no public notice-and-comment period for Rule 8 of the August 21, 2008 version of the PRRB Rules, the July 1, 2015 version of Rule 8 acts as a logical extension of the initial publication of Rule 8, and Rule 8 was indeed a change in the "substantive legal standard" regarding payment for services under the Medicare Act, PRRB Rule 8 is invalid, and

the Board's implementation of the July 1, 2015 version of Rule 8 in this case was arbitrary, capricious, an abuse of discretion, and otherwise contrary to law.

**Count VII**

**Judicial Review Under the Medicare Act**

**(Board Rule 8 and the Board's Application of it to Dismiss the Section 1115 Component are Inconsistent with Regulation and Board Rule 7 and Not in Accordance with Law)**

84. Plaintiff Hospital incorporates paragraphs 1-83 of this Complaint by reference.

85. The Board only has the authority to make rules and establish procedures that are not inconsistent with statute or the regulations of the Secretary and that are necessary or appropriate to carry out the statutory provision authorizing the Board.

86. Any requirement to identify components of issues is not in accordance with law. Any such requirement is not "necessary or appropriate to carry out the provisions" of the Medicare Act authorizing the PRRB appeals process and is inconsistent with statute and regulation.

87. Moreover, the Board's requirement that providers must identify "components" of issues arbitrarily and capriciously denies providers, including Plaintiff Hospital, the appeal rights to which they are entitled by statute.

**Count VIII**

**Judicial Review Under the Medicare Act and APA**

**(The Board's Dismissal of the Medicaid Eligible Days Issue was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

88. Plaintiff Hospital incorporates paragraphs 1-87 of this Complaint by reference.

89. The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id.* § 706(2)(E).

90. The Board's dismissal of the DSH Payment – Medicaid Eligible Days issue was arbitrary and capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

## Count IX

### Judicial Review Under the Medicare Act and the APA

**(The Board's Disregard of Plaintiff's Final Position Paper Filing was Arbitrary, Capricious, an Abuse of Discretion, Otherwise Contrary to Law, and Unsupported by Substantial Evidence)**

91. Plaintiff Hospital incorporates paragraphs 1-90 of this Complaint by reference.

92. The APA prohibits agency action that is "…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), or that is "…unsupported by substantial evidence." *Id*. § 706(2)(E).

93. The Board's total disregard of Plaintiff's final position paper filing was arbitrary and capricious, an abuse of discretion, otherwise contrary to the Medicare Act, and unsupported by substantial evidence.

## REQUESTED RELIEF

For the foregoing reasons, Plaintiff Hospital seeks an Order:

a. Reversing the Board's dismissal of the Medicaid eligible days issue and the section 1115 waiver days component of the appeal;

b. Compelling the Secretary to direct its MAC to audit Plaintiff Hospital's listing of section 1115 waiver and Medicaid eligible days, accept all verified days, and include them in the Medicaid Fraction of Plaintiff Hospital's DPP for purposes of its DSH Adjustment;

c. Awarding Plaintiff Hospital's costs and reasonable attorneys' fees, and for interest; and,

d. Fashioning such other and further relief the Court deems appropriate.

Dated: September 6, 2026

Respectfully submitted,

ALAN SEDLEY LAW CORPORATION

By: */s/ Alan J. Sedley*
Alan J. Sedley, Esq. Bay # OH0017
18880 Douglas, Suite 417
Irvine, CA 92612
Phone: 818.601.0098
Email: asedley@sedleyhealthlaw.com

*Attorney for Plaintiff*